ROGERS, Justice.
 

 On June 14, 1937, the Housing Authori-' ty of New Orleans entered into a contract with Henry Ericsson Company for the construction of the Saint Thomas Street Housing Project. The contract provided, among other things, that, any dispute arising between the contracting parties was to be submitted to arbitrators.
 

 
 *741
 
 The contractor began the actual construction of the project on July 7, 1939. Shortly thereafter, the contractor submitted to the Housing Authority drafts of breakdowns in connection with its application for the first payment to become due, as provided in the contract. The breakdowns indicated that the contractor was treating certain work designated as “Site Improvements under Division 26 of the Specifications” as not embraced within the terms of the contract. The submission of the breakdowns precipitated a dispute between the contracting parties as to those items.
 

 Under the provisions of the contract, the dispute was necessarily referable to arbitration. Negotiations to that end were entered into and completed after some delays, and, on October 3, 1939, a formal submission entitled “Articles of Arbitration and Award” was signed by counsel representing the contracting parties.
 

 The Honorable Pierre Crabites, formerly President of the International Court at Cairo, Egypt, was named by the contractor to act as its arbitrator. Mr. J. Gordon Lee, a prominent New Orleans contractor, was named by the Housing Authority to act as its arbitrator. Judge Crabites and Mr. Lee then selected Mr. John Riess, also a well known New Orleans contractor, as the third member of the Board of Arbitration.
 

 According to the agreement of the parties, the question submitted to the arbitrators for their decision was set forth in the following words: “Does the contract between the Housing Authority of New Orleans and the Henry Ericsson Company for the construction of the St. Thomas Street Housing Project (Project La. 1-1) in the City of New Orleans include the Site Improvements under Division 26 of the Specification ?”
 

 Intermittent hearings were held by the arbitrators from October 23 through December 8, 1939, and on January 19, 1940, two of the arbitrators, constituting a majority, by written opinion, entered a finding and award in favor of the Housing Authority, from which, also in a written opinion, the third arbitrator dissented. On the following day, the Housing Authority applied to the Civil District Court for the Parish of Orleans for the confirmation of the arbitrators’ award, and the contractor removed the proceeding to the United States District Court. The contractor filed its answer and counterclaim to the application of the Housing Authority and sought to have the award of the arbitrators reversed. The matter as submitted to the United States District Court was, in effect, for the confirmation or the refusal of the award of the arbitrators.
 

 The Federal Court took the matter under advisement on the record as made up before the arbitrators and on the briefs filed by counsel for the parties. Some time thereafter, that court, for lack of jurisdiction, ex proprio motu remanded the case to the Civil District Court for the Parish of Orleans. The case was then heard in the Civil District Court on the issues, record, and exhibits as if the proceeding had never been removed to the Federal Court. Thereafter, for the reasons assigned in a written opinion, the judge of the Civil District Court rendered a judgment confirming
 
 *743
 
 the award of the arbitrators and decreeing that the contract between the Housing Authority and the Ericsson Company for the construction of the St. Thomas Housing Project includes the site improvements under division 26 of the specification. The Plenry Ericsson Company, without applying for a new trial, appealed from the judgment.
 

 The Articles of Arbitration and Award provide that: “The procedure and rules of evidence applicable to proceedings in the courts of the State of Louisiana shall apply to the proceedings of arbitration.” The trial judge held with respect to this clause of the arbitration agreement that the parties to the arbitration were governed by the terms of their contract, and that their counsel could not, by any subsequent agreement, modify or change the contract in any manner.
 

 In reaching his conclusion, the judge of the Civil District Court stressed the fact that arbitration clauses or stipulations in contracts are authorized and regulated by the statutory law of this State under which arbitration agreements are irrevocable and enforceable, except on the grounds expressly set forth in the legislative act.
 

 Appellant argues that the judge of the Civil District
 
 Court
 
 was powerless to disregard the provision of the arbitration agreement requiring that the arbitration proceedings be conducted according to the procedure and rules of evidence applicable in the courts of this State, and that hence, his decision and the reasons assigned in his
 
 written
 
 opinion in support thereof should not be considered by this Court in reaching a determination of the issues here involved.
 

 The appellant takes the position that the parties under the arbitration
 
 agreement,
 
 which was executed after the dispute arose, expressly provided for a judicial determination of the dispute, and that the arbitrators were entrusted only with the duty of making up the record for the benefit of the court in its consideration of the evidence bearing upon the technical phases of the matters in dispute.
 

 Appellant insists that this Court should not only reverse the judgment of the Civil District Court but also that it should vacate the award of the arbitrators and enter a decree in favor of appellant as plaintiff in reconvention.
 

 The Articles of Arbitration and Award in this case admittedly were entered into in accordance with Act No. 262 of 1928, as amended by Act No. 218 of 1932. These statutes authorize parties to a contract to settle by arbitration any controversy thereafter arising out of the contract or out of the refusal to perform the whole or any part thereof, and they provide that such arbitration agreement “shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.”
 

 We do not find any merit in appellant’s contention that the parties to the arbitration agreement contemplated that the arbitrators were merely to assist in making up a record on the basis of which the question in dispute should be judicially determined. Appellant, in advancing the contention, overlooks the nature and purpose
 
 *745
 
 of an arbitration proceeding. As stated in American Jurisprudence, Vol. 3, Arbitration and Award, p. 830, § 2: “Arbitration is a mode of settling differences through the investigation and determination, by one or more unofficial persons selected as a domestic tribunal for the purpose, of some disputed matter submitted to them by the contending parties for decision and award, in lieu of a proceeding for a judgment in an established tribunal of justice. Its object is speedily to determine disputes and controversies by quasi judicial means, thus avoiding the formalities, the delay, the expense, and the vexation of ordinary litigation.”
 

 In Corpus Juris Secundum, Vol. 6, Arbitration and Award, page 153, § 1, it is said that “ * * * although an arbitration may not technically be a judicial proceeding, it is commonly regarded as something more than a submission for the mere ministerial ascertainment of a single fact, or the settlement of a particular question in the chain of evidence, which is not designed to terminate the whole controversy between the parties.”
 

 Appellant also overlooks the fact that the arbitration agreement was entered into pursuant to the “Louisiana Arbitration Act” (section 17, Act No. 262 of 1928) and the terms of the agreement itself. The agreement, which is styled “Articles of Arbitration and Award,” shows that the arbitration was demanded by appellant itself in accordance with the provisions of section 17, “Disputes,” page
 
 9,
 
 of the general conditions of the specifications. Paragraph 1 of the agreement reads as follows : “The question for
 
 decision by the arbitrators
 
 is agreed to be the following.” Under section 6 of the agreement, the parties provided for payments under the contract pending “a final arbitration award.” The final sentence in paragraph 6 reads as follows : “it being understood and agreed that if the
 
 final arbitration award
 
 shall be in
 
 favor of the Contractor,
 
 payments are to be adjusted on the basis of a breakdown omitting Division 26 of the Specification, and if the
 
 final arbitration award
 
 shall be
 
 against the contractor
 
 then payments are to be made on the basis of a breakdown including Division 26 of the Specifications.” (Writer’s italics.)
 

 In theory, arbitration is a substitute for a proceeding in court, and should not be confused with what takes place where parties refer to selected persons some ministerial duty or some matter involving only the ascertainment of facts, requiring no hearing nor the exercise of judicial discretion upon the question in dispute.
 

 The effect of upholding appellant’s contention would be to substitute the judgment of the court for the judgment of the arbitrators selected by the parties under the law, and would make the award of the arbitrators the commencement and not the end of the litigation.
 

 Appellant’s argument that this Court is clothed with the authority not only to vacate the award of the arbitrators hut also to render a judgment on the merits of the controversy as submitted to the arbitrators is not sound. Under the provisions of the Louisiana arbitration statute courts are not given the authority to reverse awards of the arbitrators. The only authority con
 
 *747
 
 ferred upon the court by statute is the authority to modify the award or to vacate it and direct a rehearing by the arbitrators.
 

 It is not clear whether the provision in the arbitration agreement, that the proceeding was to be conducted according to the procedure and rules of evidence applicable in the courts of this State, was considered ineffective by the judge of the district court because of the lack of power in the contracting parties to enter into the agreement or to the lack of authority on the part of their attorneys to make the agreement in their behalf. That question, however, was not raised by either of the parties and no dispute has arisen between them as to the binding force of the arbitration agreement in all its provisions. On the contrary, the parties to the arbitration agreement acted and sought their relief un-* der its provisions which have been carried into effect. They appeared before the arbitrators and participated in the proceedings without objection to any of the stipulations of the arbitration agreement and by so doing they ratified all those stipulations. So far as the appellee Housing Authority is concerned, it accepted the award of the arbitrators and applied to the court vested with jurisdiction for an order confirming the award. This constituted a clear ratification of the entire agreement made by its attorneys in submitting the controversy to arbitration. Smith v. Morse,
 
 9
 
 Wall. 76, 19 L.Ed. 597.
 

 Generally speaking, a submission to arbitration under a statute must conform to the statute in every essential particular. 3 Am.Jur., Arbitration and Award, p. 837, §: 7.
 

 If the procedure to be followed before the arbitrators is prescribed, necessarily it must be carried out in compliance-with the statutory provisions. On the other-hand, if the procedure is not specified there would seem to be no good reason why it may not be covered by the agreement of the parties. Where neither the statute nor the agreement prescribes the rules of procedure, the proceeding is governed by the-ordinary rules of practice and procedure obtaining in the place where the arbitration-is held.
 

 The primary purpose of the Louisiana arbitration statute is to enforce agreements to arbitrate and the awards of the arbitrators. In furtherance of its purpose, the statute prescribes certain regulations that apply generally to all arbitrations.. Among these regulations is one conferring-upon the arbitrators the authority to summon and compel the attendance of witnesses and to direct the taking of depositions to-be used in evidence before them. But there is nothing in the statute which forbids the-parties to agree that the rules of evidence obtaining in the .courts of the state shall apply to the proceedings before the arbitrators. In the absence of any such statutory-restriction, we are constrained to hold that the stipulation in the arbitration agreement relative to the procedure and rules of evidence to be applied in the arbitration proceedings is valid and enforceable.
 

 In pursuance to the agreement of tile-parties, we shall now consider whether the-appellant has been prejudiced by the er
 
 *749
 
 roneous admission or rejection of evidence as set out in the objections urged by appellant to the award of the arbitrators. Before doing this, however, we think that it would be proper to restate the question submitted for decision and to refer to the clause in the contract as to which the dispute between the parties has arisen.
 

 The question submitted for decision is as follows: “Does the contract between the Housing Authority of New Orleans and Henry Ericsson Company, for the construction of the Saint Thomas Street Housing Project (Project La. 1-1) in the City of New Orleans, include the site improvements under Division 26 of the Specification?
 
 ”
 

 The disputed section, after, amendment in accordance with Item
 
 7,
 
 Addendum #1, reads as follows:
 

 “ * * * 6 — Other Contracts (See Paragraph 15 — General Conditions): (a) The following items are not included under the contract:
 

 “1. Improvements outside of project site lines (except as specified under Excavation, Filing, and Site Grading and Landscape Work) and Site Improvements (Div. 26).
 

 “2. Ranges, Refrigerators. (See Divisions ‘Plumbing and Electric Work’ for requirements relative to this equipment.)”
 

 The Housing Authority contends that the closing parenthesis after the word “work” in the third line of paragraph a-1, is a typographical error. That with the elimination of the parenthesis, the clause as revised would read as follows:
 

 “ * * * 1. Improvements outside of project site lines (except as specified under Excavation, Filing, and Site Grading and Landscape Work and Site Improvements (Div. 26). * * *”
 

 Appellant filed twenty-six objections to the rulings and findings of the arbitrators. We shall consider and dispose of these objections in their regular order.
 

 1. Appellant complains that the arbitrators permitted a witness, over objection, to state the contents of a certain paragraph in the specification. This objection is without merit. The specification was already in evidence and spoke for itself, and the question was directed to the principal witness for the appellant on cross-examination, as to which the widest latitude is allowed. No injury could result to the appellant from the mere reading of the specification which was already in evidence.
 

 2. Appellant complains that the arbitrators erred by permitting ,a witness, over objection, to read into the record extensive portions of the specification already filed in evidence. We fail to see how this would prejudice appellant, .since it is not suggested that the portions of the contract were not correctly read. It is manifest that the witness was asked to read the pertinent portions of the contract for the purpose of facilitating the arbitrators in their consideration of the cáse.
 

 3. Appellant complains that a witness was permitted to testify over objection “as to how a clause in the.printed specification in evidence, forming part of the contract between the parties, was composed.” The complaint is not well-founded.
 

 
 *751
 
 The clause referred to in appellant’s objection is the clause containing the alleged misplaced parenthetical mark. The purpose of the appellee was to show by the testimony of the witness that the mark appears in the specification as the result of a typographical or clerical error as is evidenced by other counter-acting clauses in the contract.
 

 It is well settled under our jurisprudence and practice that litigants can not be controlled in the order in which they offer their evidence. It is within the discretion of the court to admit testimony, which, though not apparently relevant when offered, counsel shows it will be made so by other evidence which he undertakes to produce.
 

 Appellant’s objection went only to the effect and not to the admissibility of the testimony. The testimony was not offered for the purpose of contradicting or varying the terms of the contract, but it was offered to show that, as the result of the accidental or negligent use of the closing parenthetical mark, the instrument is given a meaning contrary to the intent of the parties, as clearly appears from the whole tenor of the instrument.
 

 In 12 Amer.Jur., Contracts, § 256, pp.
 
 799
 
 and 780, the rule governing the interpretation of contracts in the light of the presence or absence of punctuation marks is as follows : “In a contract which contains punctuation marks, the words, and not the punctuation, are the controlling guide in its interpretation. Punctuation is always subordinate to the text and is never allowed to control its meaning. The court will take the contract by its four corners and determine its meaning from its language and, having ascertained from the arrangement of its words what its meaning is, will construe it accordingly, without regard to the punctuation marks, or to the want of them.” See, also, to the same effect, 17 C.J.S., Contracts, § 306, pages 723 and 724.
 

 In Dawson v. Ohio Oil Co., 153. La. 657, 96 So. 508, this Court, citing Article 14 of the Civil Code, held that the niceties of grammar afford no safe guide in interpreting contracts, as well as laws. We think the presence of improper punctuation is
 
 no
 
 more'allowable than bad grammar to-change the meaning of a contract which is. obvious from the construction of the whole instrument.
 

 4. Appellant complains that the arbitrators improperly admitted in evidence, over objection, a self-serving document produced by a witness for the appellee. The complaint is untenable. The document is-not self-serving. It was prepared by one of the engineers of the Housing Authority-in the presence and with the approval of' two representatives of the Ericsson Company.
 

 5. Appellant complains that the arbitrators erred in permitting an expert witness to be asked a hypothetical question! as to the practice commonly followed in. connection with specifications, such as the. specifications under review.
 

 As shown by the record, the case apparently was presented to the arbitrators on the theory that Ericsson Company was. charged with the resulting error, when its,
 
 *753
 
 representatives failed to ask the Housing Authority for an interpretation on noticing a possible conflict in the specification, as they admitted in their testimony. We think that the question was clearly admissible to show whether under the common business practice obtaining in such matters the representatives of the Ericsson Company were at fault when, discovering the apparent exclusion from the specification of the site improvements under Division 26, they failed to disclose that fact. The objection went to the effect to be given to the testimony and not to its admissibility.
 

 6. Appellant complains that the arbitrators permitted the witness, over objection, to discuss in detail the foundations that were designed for the buildings, when the plans, forming part of the contract, were already in evidence. The plans and specifications are voluminous and involve considerable detail, and we see no good reason why an expert witness could not be questioned as , to what was represented on the plans and specifications for the purpose of properly preparing the record -for review by the arbitrators, or by the court, as the case might be. Moreover, appellant, has not shown where it was prejudiced by the testimony, since it does not appear from the findings that the arbitrators considered this testimony in reaching their conclusion.
 

 7. Appellant complains that the arbitrators erred in. permitting a witness, over objection, to answer a question with reference to a bid received by the Ericsson Company from a certain subcontractor. We find no force in the objection to the question which was propounded to one of appellant’s witnesses while he was under cross-examination. As stated by counsel for the appellee, the question was intended to develop the fact that the Ericsson Company was placed on notice by the way in which the subcontractors submitted their bids, that they interpreted the specification as including the site improvements referred to in division 26, and that, in submitting its bid, the Ericsson Company governed itself accordingly.
 

 8. Appellant complains that the arbitrators improperly permitted counsel for appellee to ask one of its witnesses whether in entering into a subcontract with appellant, he intended that appellant should be bound to have the subcontractor “perform such site improvements” if appellant should obtain the general contract. The record shows that Emile Babst, of the Emile Babst Company, one of the subcontractors dealing with the Ericsson Company, was interrogated as to the circumstances under which his concern contracted with the Ericsson Company. Appellant’s counsel objected to any reference to the subcontract on the ground that it was the consideration of a collateral issue.
 

 It appears that the contract of the Babst Company with the Ericsson Company, which contract was signed prior to the signing of the contract with the Housing Authority, involved work to cost not less than $104,000 for the site improvements which are in dispute and which the Ericsson Company, by virtue of its contract with the Babst Company, engaged that concern to do. In these circumstances, the question was clearly relevant as tending to show the
 
 *755
 
 intention of the Ericsson Company to be bound for the construction of the site improvements, and that it did, therefore, include the cost of these improvements in its basic bid.
 

 9. Appellant complains that the arbitrators improperly relied on evidence as to the contents of the bids of unsuccessful bidders, which, though tendered over objection, had not been admitted in evidence by the arbitrators, and by improperly finding that the unsuccessful bidders had intended, if successful, to perform the work in dispute.
 

 The evidence referred to was presented in the form of letters obtained from three other bidders on the same project. At the beginning of the hearing before the arbitrators, in order to save time, and, subject to objection as to the admissibility of the evidence, the parties agreed that if the writers of the letters were called as witnesses, they would testify in accordance with the statements contained in the letters. The arbitrators reserved their ruling on the objection but it does not appear that they ever made the ruling. At the close of the hearing, in response to the demand of counsel for the appellee, counsel for the appellant produced and identified a letter received by appellant from Bein and Company, one of the unsuccessful bidders, addressed to the Ericsson Company in answer to a letter written by the secretary of that company inquiring as to whether Bein and Company’s bid covered the site’ improvements. Since the arbitrators failed to rule on the objection nothing as to its admissibility is presented for review by this Court. However, we do not understand from our reading of the findings of the arbitrators that they based their decision on the letters of the unsuccessful bidders. The reference in their findings to those letters was obviously made as a part of the history of the case and not for the purpose of reaching any conclusion upon which to base their ultimate decision.
 

 A careful reading of the entire opinion of the arbitrators clearly shows that their rather casual reference to the letters in no way influenced them in reaching a conclusion and therefore was not prejudicial to the appellant.
 

 10. Appellant complains that the arbitrators improperly relied “for important parts of their findings and conclusions, on the evidence improperly admitted into the record as hereinabove set forth.” This complaint involves merely a general objection and conclusion of the pleader, which obviously requires no comment by the Court.
 

 The remaining sixteen complaints of the appellant involve the merits of the controversy submitted to the arbitrators for their decision.
 

 An award, ordinarily, concludes and binds the parties as to the merits of all matters, properly within the scope of the award and intended by the arbitrators to be finally decided. 6 C.J.S., Arbitration and Award, § 95, page 240. In this case, the only restriction placed upon the powers of the arbitrators was as to the procedure and ' admission of evidence; in all other respects, ■they were vested with plenary power.
 

 
 *757
 
 Nothing in the award relative to the merits of the controversy as submitted could justify the Court in setting aside the award, in the absence of fraud, misconduct,, or other objections as set forth in the Louisiana Arbitration Act.
 

 There is nothing in the record, made up before the arbitrators and submitted to this Court for review, which shows (a) that the award was procured by corruption, fraud or undue means; (b) that there was evident partiality or corruption on the part of the arbitrators, or either of them; (c) that the arbitrators were guilty •of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misconduct by which the rights of any party have been prejudiced; or (d) that the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. Section 10 of Act No. 262 of 1928.
 

 The appellant has asked for such further orders and relief, as equity, law and the nature of the case may require, and the Court understands it has authority to modify or correct the award made by the arbitrators, if the modification or correction is justified by the evidence.
 

 From our examination of all the evidence produced before the arbitrators, we are unable to find any justification for modifying or correcting the award, because (1) there is no evident material miscalculation of figures, or an evident material mistake in any person, thing, or property referred to in the award; (2) the arbitrators have not awarded upon a matter not submitted to them; and (3) the award is not imperfect in the matter of form. Section 11 of Act No. 262 of 1928.
 

 Our study of the record in connection with the objections urged by the appellant against the rulings and findings of the arbitrators satisfies us that the decision of the arbitrators was fairly and . honestly made, after a full hearing of the parties on the question submitted for decision.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 OTSTIELL, C. J., and LAND, J., absent.