John W. MECOM, Jr., and John W. Mecom, Sr.

v.

Potter PALMER et al.

Civ. A. No. 19277.

United States District Court,
W. D. Louisiana,
Alexandria Division.

Nov. 27, 1974.

Edward M. Carmouche, Lake Charles, La., for plaintiff and counter-claim defendant.

Norman Waite, Jr., Winston & Strawn, Chicago, Ill., Austin W. Lewis, Liskow & Lewis, New Orleans, La., for defendants.

NAUMAN S. SCOTT, District Judge:

## RULING

Plaintiffs, John W. Mecom, Jr. and John W. Mecom, Sr., (hereinafter referred to as the Mecoms), filed this suit to compel defendants Potter Palmer, George N. Gillett, Jr. and John H. O'Neil, Jr., (hereinafter referred to as the Palmer Group) to submit their contractual disputes to arbitration. Pursuant to two Letter Agreements, dated May 8, 1973 and May 30, 1973, the Palmer Group agreed to buy and the Mecoms agreed to sell their entire interest (79.5%) in a Louisiana partnership known as the New Orleans Saints, a franchise organization of the National Football League. By letter of July 24, 1973, the Palmer Group terminated the contract charging that warranties and representations made by the Mecoms had proven to be materially inaccurate. The Mecoms thereafter demanded arbitration as provided for in the two Letter Agreements and appointed the first arbitrator.[1]

The Palmer Group refused to arbitrate, and on August 15, 1973 this complaint was filed with an attached Motion to Compel Arbitration. On October 9, 1973, the defendants filed, simultaneously, their answer and counterclaims alleging that the contract, as embodied in the Letter Agreements, was void *ab initio* because of error, fraud, failure of suspensive condition, breach of warranty, and misrepresentation, *to wit*:

1. That there were no lawsuits pending against the partnership affecting its business or its property, while in fact there were then pending approximately 27 different lawsuits claiming damages in excess of $50 million;

2. For the partnership's fiscal year ending March 31, 1973, it had enjoyed a net profit of approximately $1.0 to $1.25 million, while in fact its net operating profit during said year was approximately $400,000.

The counterclaims alleged further that the Letter Agreements relied upon by the Mecoms, including the arbitration provision, were void as they called for the sale of securities and therefore were in violation of the Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j, and Section 29(b), 15 U.S.C. § 78cc(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5.

The plaintiffs moved the Court for summary judgment ordering the arbitration of the contractual disputes between the parties and dismissing the counterclaims.

■■ The Palmer Group has insisted the Letter Agreements contemplated

---

1. 12. *Arbitration*

Should any dispute arise from or out of this agreement either party may initiate binding arbitration proceedings under the provisions of the Louisiana Arbitration Law as modified herein. A party desiring to submit a matter to arbitration ("the submitting party") shall make written demand on any other party ("the respondent party") by certified mail summarizing the matter in dispute and designating one arbitrator. Within 5 days the responding party shall, by certified mail directed to the submitting partner, designate a second arbitrator. The two arbitrators so named shall meet in New Orleans, Louisiana, or confer by telephone, within 3 days following the designation of the second arbitrator for the purpose of selecting a third arbitrator. Upon selection of the third arbitrator, a hearing shall be held in New Orleans, Louisiana within ten days."

the sale of an "investment contract", a "certificate of interest or participation in any profit sharing agreement", or any "instrument commonly known as a "security". However, rather than systematically analyzing these definitional statements of the problem, we feel, that under the present factual conditions, one is better advised to disregard a technical approach and concentrate on a more functional one. As the Supreme Court stated in Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967):

"(F)orm should be disregarded for substance and the emphasis should be on economic reality."

The economic realities of this case are that the Palmer Group *approached* the Mecoms with an offer to purchase their *entire* interest in the Saints. The sellers (Mecoms) did not solicit "the *use* of the money of others on the promise of profits". SEC v. W. J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L. Ed. 1244 (1945). Nor could the Palmer Group assert that its fortunes would have been "interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties". SEC v. Glenn Turner Enterprises, Inc., infra, 474 F.2d at 482. See, e. g. Los Angeles Trust Deed and Mortgage Exchange v. SEC, 285 F.2d 162 (9th Cir. 1961), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241. As "investor", the Palmer Group would own 79.5% of the Saints partnership. "(T)hose essential managerial efforts which affect the failure or success of the enterprise" would rest squarely on the shoulders of the Palmer Group itself. SEC v. Glenn Turner Enterprises, Inc., supra, 474 F.2d at 382.[2] And even though it is fundamental that remedial

legislation such as the Securities Exchange Act should be construed broadly, one must remember that "(t)he Acts were designed to protect the American public from speculative or fraudulent schemes of promoters". SEC v. Glenn Turner Enterprises, Inc., 474 F.2d 476 (9th Cir. 1973). What we have here is no promotional scheme by the Mecoms. This arrangement could not be said to contemplate the sale of a security; it is the sale of a business, plain and simple. The Mecoms were to sell their entire interest in the New Orleans Saints, the controlling interest. The Palmer Group was to buy the controlling interest. This in no way coincides with the traditional notion of a security.

■■■ With regard to the matter of arbitration, the Palmer Group contends its obligations were subject to the truthfulness and correctness of warranties and representations made by the Mecoms.[3] According to the defendants, the alleged misrepresentations by the Mecoms amounted to a failure of a suspensive condition, as defined in Louisiana Civil Code, Article 2021, and thus operated to void the contract *ab initio* as well as the arbitration provision itself.

As authority for this argument defendants refer the Court to the Louisiana Supreme Court case of Stone v. Stone, 292 So.2d 686 (1974). *Stone* involved the dissolution of an insurance agency partnership. The partnership agreement contained a clause requiring the arbitration of:

"Any dispute . . . over any matter pertaining to the operation of the partnership".

The Louisiana Supreme Court held that since the partnership was one of unlimited, or indefinite duration, it could be dissolved at will, by either partner,

---

**2.** The Fifth Circuit adopted this language and the tests enunciated in the Glenn Turner case; see SEC v. Koscot Interplanetary, Inc., 497 F.2d 473 (5th Cir. 1974).

**3.** *7. Additional Conditions*
Our obligation hereunder (including our obligation to close the transactions herein contemplated) is subject to the condition that the warranties and representations made by

you herein shall be true and correct in all material respects on and as of the date of closing with the same effect as if such warranties and representations had been made on and as of such date and you shall have conformed and complied with all agreements, covenants and conditions on your part required to be performed or complied with on or prior to the date of closing."

without the necessity of proving a cause for dissolution, such as bad faith.

"Under these circumstances, there is no dispute between the parties subject to arbitration. The requesting partner has the unqualified right to dissolve the partnership, under the facts at issue. There is nothing to arbitrate. It is, further, doubtful that the agreement to arbitrate 'any dispute . . . over any matter pertaining to *operation* of the partnership' intended to include within its scope the right of either party to demand *dissolution* of the partnership, in the absence of language more clearly specifying such intent. [See Domke on Commercial Arbitration, section 13.-03] ("Partnership") (1968).

Arbitration presupposes that an arbitrator may decide in favor of one party and against another. Here, the legal right of a partner to dissolve the partnership at his will is not a "dispute" subject to arbitration, at least in the absence of further showing".

We do not feel, however, that the *Stone* case is controlling on the issues before us today. Here, neither are we concerned with the dissolution of a partnership of indefinite term (which the Saints partnership is not)[4] nor the applicability of an arbitration clause "pertaining to the *operation* of a partnership". What we are concerned with is whether the defendant must be compelled to arbitrate "(s)hould *any* dispute arise *from* or *out* of *this agreement*". (Referring to the Letter Agreements) (emphasis ours).

In Bodman, Murrell & Webb v. Acacia Foundation of L.S.U., Inc., 246 So.2d 323 (La.App. 1st Cir. 1971), an architect sought to compel arbitration of disputes arising out of an agreement with Acacia Foundation of L.S.U., Inc., for the preparation of plans and specifications and supervision of construction of a fraternity house on the campus of Louisiana State University. The dispute arose when Acacia dismissed Bodman as its architect charging that budget limitations and time schedules had not been met.

Section 9 of the contract provided:

"ARBITRATION.

All questions in dispute under this agreement shall be submitted to arbitration at the choice of either party."

Acacia's position was that if the contract containing the arbitration provision were breached in its entirety, then the arbitration provision fell with the remainder of the contract.

The First Circuit rejected this viewpoint and found support in the federal jurisprudence: Prima Paint Corporation v. Flood and Conklin, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270(1967). In *Prima,* the United States Supreme Court stated: "(E)xcept *where the parties otherwise intend*—arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are imbedded, and where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." Prima Paint Corporation v. Flood and Conklin, supra at 402, 87 S.Ct. at 1805. The *Bodman* court, supra, 246 So.2d at 326, stated:

"(W)e find that the same rule should apply in Louisiana. The public policy of this state favors arbitration. Article III, Section 36, Constitution of 1921; Housing Authority of New Orleans v. Henry Ericsson Co., 197 La. 732, 2 So.2d 195, 200 (1941); Livingston v. Shreveport—Texas League Baseball Corp., 128 F.Supp. 191, 200 (U.S.D.C., W.D., La.1955).

\*    \*    \*    \*    \*    \*

"We think it clear that the legislature intended arbitration clauses to be separable from the contracts in which they are contained.

R.S. 9:4201 provides that: a provision . . . to settle by arbitration

---

4. Paragraph 7 of the partnership agreement provides that "(T)his partnership shall continue for a term of ten years."

. . . shall be valid, irrevocable, and enforcible, save upon such grounds as exist . . . for the revocation of any contract.

This can be reasonably interpreted to mean only that there must exist grounds for the revocation of the arbitration provision itself, apart from the grounds that may exist for the revocation of the remainder of the contract, before a party thereto can avoid the enforcement of its provisions."

We find no such conditions or grounds in the disputes between the Mecoms and the Palmer Group. Resolution of the two main issues, that is, (1) the presence or absence of pending litigation against the Saints, and (2) the profit status of the Saints partnership, would seem to be that type of problem contemplated by the arbitration clause.

Therefore, we conclude the plaintiff's motion for summary judgment dismissing the counterclaims of the defendants and ordering arbitration of the contractual disputes should be, and accordingly is, granted.

Plaintiff should submit a judgment for execution within ten (10) days.