SARTAIN, Judge.
This is an appeal from a judgment of the district court affirming an arbitrator’s award. • We reverse and remand.
On September 16, 1968, Kenneth R. Gar-ber (appellant) entered into a contract with James L. Firmin (appellee) whereby the latter was to prepare plans and specifications for the construction of a residence. The instrument itself is AIA Document B131, entitled “Standard Form of Agreement Between Owner and Architect.” It provided for a fee of ten percent of the construction cost to be paid according to the following percentages:
Schematic Design Phase.15%
Design Development Phase .... 357„
Construction Documents Phase . . 757
Bidding or Negotiation Phase . . 807
Construction Phase .100%
The contract itself does not provide for a cost limitation. It simply states, “It is the intention of the Owner to erect a new residence near Patterson, Louisiana.” The question of cost is an issue. Appellant contends that the construction limit was to be $60,000.00.
The lowest bid received was $110,270.00. Efforts to reduce the cost by modifying the original plans proved unsuccessful. A second set of plans was prepared. Initially, appellant and his wife assisted appellee. However, before these plans were ready for bidding appellant advised the architect that he and his wife had decided to wait a “couple of years” before proceeding with the construction of a new home. Communication between appellant and appellee ceased. Nonetheless, appellee obtained a negotiated bid on these later plans in the amount of $79,240.00. This bid was obtained on October 20, 1970.
*247 Under date of August 30, 1971, the following letter was sent by appellee to appellant:
“Mr. Kenneth R. Garber
P. 0. Box 815
Morgan City, Louisiana 70380
Re: Proposed Residence for Patterson, Louisiana
Dear Ken:
We have obtained from Fangue Bros., Inc., a cost estimate on the second set of plans for your proposed residence in Patterson, (Drawings dated 20 October 1970). At the time that I delivered prints of these drawings to you, 28 October 1970, you advised that you would obtain an estimate within two weeks and would send me a copy. As of today we have not received it so we had the Fangue’s run an estimate to settle the matter.
To review briefly, we opened bids on the initial set of plans, (Dated 15 August 1969), on 13 November, 1969 and received a bid of $103,200.00 for the house and $7,320.00 for drives, septic tank, and field lines. The bid for the house was well above the amount you wished to spend and our efforts in negotiations with the low bidder, Fangue Bros., were unsuccessful in reducing the cost to an acceptable figure. We then agreed to prepare a second set of drawings for the house such that it would have cost $60,000.00 in the construction market of November 1969. You then decided not to build the house until some future date. The second set of drawings were completed and delivered to you on 28, October 1970, as previously stated. The new budget including drives, septic tank, etc., was then $60,-000.00 + $7,320.00 plus the percentage increase in construction costs from November 1969. Construction has risen in our area approximately 18% in the two years hence which increases the budget at this date to $79,437.60. ($67,320.00 X 1.18 = $79,437.60).
The estimate that we .received from Fan-gue Bros., was $79,240.00, which is slightly below the budget maximum. Our part of the agreement has been full-filled, having prepared two sets of drawings and specifications with the final set being within the cost guidelines. We therefore again respectfully submit our invoice in the amount of $3,800.00 for the remainder of the fee due for this work. Your remittance will be appreciated. Very truly yours,
James L. Firmin AIA”
Appellee explained that the attached statement for architectural services rendered in the amount of $3,800.00 represented eighty percent of a ten percent fee for the construction of a residence at a cost of $60,-000.00, less a previous payment of $1,000.00. ($60,000.00 X 10% X 80% - $1,000.00 = $3,800.00).
The contract between the parties provides that any dispute would be “. decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . ”. Accordingly, this matter was submitted to arbitration under the auspices of American Arbitration Association on January 24, 1975.
In opening statements before the arbitrator appellee submitted that (1) there was no cost limitation; and (2) if there was, appel-lee had complied with his contractual obligations. Stated another way, appellee was entitled to receive his fee based on the first bid of $110,270.00 or, alternatively, based on the second bid of $79,437.00.
Appellant’s position was (1) that there was a cost limitation of $60,000.00; and (2) that appellee’s failure to provide plans for construction of a residence within this limitation precluded his right to recovery. Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367 (1973).
Following a hearing the matter was submitted pending the filing of the transcript and briefs. On March 17, 1975, the arbitrator, without oral or written reasons, filed his “Award” in favor of appellee and against appellant in the amount of $7,821.60 and costs. This award is based on the first bid price of $110,270.00. ($110,270.00 X 10% X 80% - $1,000.00 = $7,821.60).
*248 Appellee then petitioned the district court to have the arbitrator’s award confirmed and to obtain a judgment against appellant in like amount. At the confirmation hearing the record of the arbitration proceedings together with the exhibits there offered were placed in this record. Oral argument was had and the matter submitted.
The trial judge, in his written reasons for judgment, stated that the contract entered into between these parties is “clear, concise and unambiguous and contains no provision for a ‘cost limit’.” He therefore concluded that parol evidence was inadmissible to vary its written terms and affirmed the award. Cited as authority were C.C. Art. 2276 and Moossy v. Huckabay Hospital, Inc., 283 So.2d 699 (La.1973). Implicit in this ruling is the conclusion that parol evidence was inadmissible at the hearing conducted by the arbitrator.
Without discussing the factors which we consider distinguish Moossy, above, from the facts in the instant matter, it suffices here to say that the parol evidence rule is not applicable. We must therefore hold that the decision of the trial judge is in error.
The parol evidence rule, C.C. Art. 2276, was injected in this controversy for the first time when the matter was before the district court. At this juncture, any objection as to the purported use of parol evidence to vary or modify the terms of a written contract must be considered as having been waived. Southern Scrap Mat. Co. v. Commercial Scrap Mat. Corp., 239 La. 958, 120 So.2d 491 (1960); and, In re Industrial Homestead Assn., 198 So. 528 (La.App.Orl. 1940); writs refused, February 3, 1941.
We now turn to the court’s function in matters of arbitration. Louisiana Arbitration Law is found in R.S. 9:4201 through 4217. Pertinent to the issue here is Section 4210. Relevant portions of this section provide:
“In any of the following cases the court in and for the parish wherein the award was made shall issue an order vacating the award upon the application of any party to the arbitration.
A. Where the award was procured by corruption, fraud, or undue means.
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them. (Emphasis ours) * * * 11
We are here concerned only with those grounds italicized above.
We note that our research has failed to reveal any prior recorded decision where a Louisiana appellate court has been called upon to consider the vacation of an arbitrator’s award on the grounds of “undue means” or “evident partiality.”
Louisiana has long recognized the right to and advantages of arbitration. C.C. Arts. 3099-3132. Subsequent legislation has perfected this procedure. Acts of 1928 (262) and 1948 (377). In Housing Authority of New Orleans v. Henry Ericsson Co., 197 La. 732, 2 So.2d 195, 199 (1941), the court quoting from American Jurisprudence, Vol. 3, Arbitration and Award, p. 830, § 2, stated:
“ ‘Arbitration is a mode of settling differences through the investigation and determination, by one or more unofficial persons selected as a domestic tribunal for the purpose, of some disputed matter submitted to them by the contending parties for decision and award, in lieu of a proceeding for a judgment in an established tribunal of justice. Its object is speedily to determine disputes and controversies by quasi judicial means, thus avoiding the formalities, the delay, the expense, and the vexation of ordinary litigation.’ ”
In the furtherance of the purpose and intention of arbitration as noted above, the scope of judicial review as to the findings and conclusions of an arbitrator is severely restricted and the courts have consistently respected this limitation. Accordingly, a court does not ordinarily act in an appellate capacity but confines its determination to where there exists one or more of the specific grounds for impeachment as provided for under the applicable statute. 6 C.J.S. Arbitration § 162 (1975). However, *249 the award of an arbitrator is not inviolable. The courts have on occasions refused to confirm an award where to do so would compound a palpable or gross mistake or error. 6 C.J.S. Arbitration § 150 (1975).
One author has stated:
“There is a clear cut doctrine that once an award is made by the arbitrators, the courts will not examine the issue or the evidence that was presented (* * *). To mitigate the severity of this rule, a doctrine has evolved which enables a court to examine the issues and evidence on which the award is based on the policy of preventing manifest injustice but on the legal theory of implied fraud, partiality or misconduct.
“In valuation cases mere inadequacy or exeessiveness of the award is not sufficient ground for setting it aside, but in particular cases it may be so grossly inadequate or excessive as to evidence or to establish or imply or infer partiality, corruption, fraud, or misconduct on the part of the appraisers (* * *). If an appraiser, without knowledge, basis of fact, or information on the subject sets a valuation, or does so on a mistake of law, and in doing so acts arbitrarily and to the harm of a party, this is misconduct on which the award will be set-aside ( * *).
“The manifest injustice of an award gives grounds for vacation if it is so at variance with any legitimate conclusion which could be drawn from the facts and evidence as to imply bad faith, fraud, or a failure to exercise judgment on the part of the arbitrators ( * * *). It has been suggested that this terminology is unfortunate and that a more realistic doctrine would be along the lines of ‘fundamental error’ rather than upon fraud (* * *). As a limitation on this rule the courts will uphold the award if there is any reasonable basis for it in the evidence before the arbitrator.
“A gross mistake of law or of fact constituting evidence of misconduct amounting to fraud or undue partiality is a similar doctrine used to impeach an award, provided there is clear evidence supporting the grounds of impeachment (* * *). Another doctrine is that a palpable mistake or substantial error in an award which would work injustice or a fraud on either party would vitiate the award (* * *).” (Reference to footnotes omitted.) Rothstein: Vacation of Awards, Etc., 10 Vanderbilt Law Review 813, 822, 823. (Emphasis ours)
The language found in Section 4210, above, was first incorporated in Act 282 of 1928 and later adopted verbatim in Act 377 of 1948. Similar language is found in arbitration statutes of numerous sister states. See, Comparative Laws under LSA-R.S. 9:4201.
By way of illustration such is the situation in Maryland. In O-S Corporation, et al. v. Samuel A. Kroll, Inc., 348 A.2d 870, 872 (Md.App.1975), the court cited that state’s applicable law:
“ ‘(b) Grounds. — The court shall vacate an award if:
(1) An award was procured by corruption, fraud, or other undue means; . [or if]
(3) The arbitrators exceeded their powers; . . .
and then stated:
“We hold that when reviewing the fruits of an arbitrator’s award, a judge may withhold only such as were tainted by improbity or based on a completely irrational interpretation of the contract. We recognize the very limited extension of the reviewing court’s scope of review to include authority to vacate an award that is ‘completely irrational.’ Statutory support for this is found not only in the fact that arbitrators ‘exceeded their powers’ when they reach a completely irrational result, but also in the connotation of the words ‘undue means’ in Sec. 3-224(b)(1). An award that is ‘completely irrational’ is inferentially opprobrious, i. e., ‘[expressing or carrying a sense of disgrace or contemptuous scorn’, causing it to be suspect in its conception.” (footnote omitted)
*250 We now return to the issue at hand. Our examination of the record as made up before the arbitrator fails to reveal any evidence whatsoever that can be reasonably construed to support a conclusion that the subject contract embraced a provision which called for the construction of a home in total disregard of the cost involved. The contrary is true. We expect appellant’s testimony to be cost-restricted. But even appellee’s testimony supports a cost restriction. On direct examination:
“Q. In connection with the contract, let me ask you this question right off: Were you ever given a fixed budget or a fixed price structure within which you were expected to work?
A. Throughout the discussions from the early stages of the discussions Mr. Garber indicated that he would — we requested or asked him what price range he was looking at; because looking at the program that was presented that would indicate, you know, a certain price structure, and asked what he intended to spend on the project, and he indicated that he would like for the house to run in the neighborhood of about $60,000.00. That was his general price range that he would like to spend.”
On cross examination:
“Q. Mr. Firmin, I have a note here that at and prior to submission of the first set of plans, is your testimony that a $60,000.00 price range had been discussed with you prior at and prior to the first set of drawings?
A. Right. We discussed a general price range of $60,000.00.”
Mr. Lynn J. Drury, appellee’s associate, testified on direct examination:
“Q. Did you feel you were bound by a $60,000.00 maximum figure?
A. Not in the strict adherence to the penny, no.”
On cross examination:
“Q. Mr. Drury, but at some time in this stage you were aware of a $60,-000.00 parameter, is that correct?
A. Yes. We had discussed that numerous times with the Garbers in their residence.”
The risk of limited quoting is the charge that the same is out of context and does not correctly or accurately reflect the cumulative effect of the whole of one’s testimony. Assuming, however, that the $60,000.00 is a general term, “ballpark figure”, in that appellant was to furnish some of the materials to effect a savings, the record reflects that such savings did not begin to bring the cost figure within a reasonable range of what was undoubtedly the intention of the parties.
We must also find that interpreting the contract between these parties the arbitrator could not have attached any significance to appellee’s letter of August 30, 1971, above. By its very contents it resolved any misunderstanding that might have existed between these parties prior to the commencement of the second set of plans.
We hold that when reviewing the record of an arbitration proceeding a court may withhold confirmation of only such awards as are clearly reflective of a completely irrational interpretation of the contract. The court should recognize the limited scope of its reviewing authority and in declining confirmation its action should have for its sole purpose the prevention of an obvious mistake resulting in gross miscarriage of justice. Authority for this view is found in R.S. 9:4210(A)(B) as the same prescribes “undue means” and “evident partiality” as grounds for vacating an arbitration award.
Applying the above standard to the facts in the instant matter, we find that the award of the arbitrator is so grossly irrational as to be tantamount to “undue means” and “evident partiality” and must be vacated.
Appellant further argues that the arbitrator erred as a matter of law in failing to adhere to the rule announced in Rosenthal v. Gauthier, above. He contends that he should be absolved of any liability for archi *251 tectural fees based on the failure of the architect to provide plans and specifications for the construction of a residence within a cost limitation of $60,000.00. We note that the contract provides that in the event of a cost overrun (3.5.1) the architect agrees to make such modifications in the plans as are necessary to bring the construction cost within the fixed limit. In this respect, the record discloses that appellant did not respond to appellee’s increase relative to the second set of plans. Further, appellee based his August 30,1971 statement in part on an increase in construction cost during the intervening two years. These are matters that should be considered by the arbitrator and we refrain from expressing any opinion thereon.
For the above reasons, the judgment of the district court is reversed and set aside and the Arbitrator’s Award of March 17, 1975 is hereby vacated and this matter is remanded for further arbitration. All costs of these proceedings are assessed against appellee.
REVERSED AND REMANDED.