459 So.2d 566 (1984)
WOODSON CONSTRUCTION COMPANY, INC., Plaintiff-Appellee,
v.
R.L. ABSHIRE CONSTRUCTION COMPANY, INC., Defendant-Appellant.
No. 83-1151.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1984.
Rehearing Denied December 13, 1984.
*567 Plauche, Smith & Nieset, A. Lane Plauche, Lake Charles, for plaintiff-appellee.
Jones, Jones & Alexander, J.B. Jones, Jr., Cameron, for defendant-appellant.
Dennis Vidrine, Lafayette, for defendant-appellee.
Before DOMENGEAUX, CUTRER and LABORDE, JJ.
CUTRER, Judge.
The issue presented in this appeal is whether the trial court properly granted a motion for summary judgment nullifying a default judgment for the lack of subject matter jurisdiction. The default judgment was rendered in a separate suit entitled R.L. Abshire Construction Company, Inc. v. Woodson Construction Company, Inc., 459 So.2d 571 (La.App. 3rd Cir.1984). We shall render a separate opinion in this latter case.
After the default judgment was rendered in favor of Abshire and against Woodson in the amount of $2,356,354.34, Woodson filed this action of nullity seeking to set aside the default judgment. The trial court granted Woodson's motion for summary judgment nullifying the default judgment rendered in the separate suit. Appeals were taken in both suits.
We shall first consider the appeal in this nullity action for the reason that, if Woodson is successful in this nullity action, the issues presented in the appeal of the default judgment, 459 So.2d 571, will be rendered moot and that suit will be subject to dismissal.

FACTS
The United States Department of Energy hired Parsons-Gilbane, a Joint Venture (Parsons) as the prime contractor for the construction of a Petroleum Reserve Project near Sulphur, Louisiana. The project involved the preparation of the site, drilling of wells, and installation of equipment for the storage of oil in a salt dome. Woodson Construction Company, Inc. (Woodson) entered into a subcontract with Parsons to prepare the project site. Woodson's contract contained an arbitration clause covering all disputes arising under the contract. Woodson subcontracted much of the work to various other subcontractors, including defendant, R.L. Abshire Construction Company, Inc. (Abshire). For the sake of brevity, the contract between Parsons and Woodson will be referred to in this opinion as the "Parsons-Woodson contract." The contract between Woodson and Abshire will be referred to as the "Woodson-Abshire contract."
As the work progressed, a dispute arose, involving Parsons, Woodson and the subcontractors as to the sums owed to the subcontractors (including Abshire) for extra work performed by them. Upon completion of the job, Woodson and its subcontractors, including Abshire, entered into an agreement to retain Frederick Crowley, an expert arbitration attorney, to present their disputed claim to arbitration. Mr. Crowley presented Woodson's claims against Parsons in a six-week long arbitration proceeding entitled "In the Matter of Arbitration between Woodson Construction Company and Parsons-Gilbane, A Joint Venture." Mr. Crowley also represented and presented the claims of Abshire and the other subcontractors in the same proceeding under the sponsorship of Woodson. The panel awarded Woodson and its subcontractors the aggregate amount of $2,309,394.00. The total sum granted in the award was *568 paid to Woodson, which then paid all of the subcontractors their share as specified in the arbitration award. Abshire refused to accept payment because the company president, Robert Abshire, believed the arbitration award was not enough to cover its claim. Abshire then filed suit Number 83-983 against Woodson for $2,707,011.42. Upon Woodson's failure to timely file an answer, a default judgment against Woodson was entered in the amount of $2,356,354.83.[1] A motion for a new trial by Woodson was denied as being untimely filed. Woodson then appealed that judgment.
Woodson then filed this suit to nullify the default judgment, rendered in suit Number 83-983, for lack of subject matter jurisdiction. The trial judge issued a temporary restraining order pending hearing on Woodson's rule for a preliminary injunction. The trial judge held a hearing and granted the preliminary injunction enjoining the enforcement of the default judgment. Woodson then filed a motion for summary judgment. Woodson argued that the arbitration clause divested the trial court of subject matter jurisdiction in the rendition of the default judgment. The trial judge granted the summary judgment and also permanently enjoined Abshire from enforcing the default judgment. Abshire appeals from that judgment and we affirm.

SUMMARY JUDGMENT
A party is entitled to summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966. All doubts as to whether to grant a summary judgment must be resolved against the party seeking it. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (La.1963). However, a summary judgment is proper when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts submitted to the court. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976); Clement v. Taylor, 382 So.2d 231 (La.App. 3rd Cir.1980). The plaintiff's motion for summary judgment was granted on the grounds that the default judgment is a nullity for lack of subject matter jurisdiction under LSA-C.C.P. art. 2002.
The propriety of the summary judgment in this case depends on the resolution of two questions. First, whether Abshire agreed to submit his disputed claims to arbitration.[2] Second, if so, does the submission of the dispute to arbitration divest the trial court of subject matter jurisdiction?
The Parsons-Woodson contract contains an arbitration clause which reads in pertinent part as follows:
"ARTICLE XIIDISPUTES
1.0 Any dispute arising under this subcontract that is not settled by agreement of the parties, or pursuant to the administrative relief provided for in the following paragraphs of this clause, shall be settled by arbitration as provided in Section 5 of this clause.....
* * * * * *
5.0 In the event of any dispute, not settled by agreement of the parties or pursuant to the administrative relief provided for in the proceeding [sic] Paragraphs 1.0, 2.0, or 3.0 of this Article, between Contractor and Subcontractor with respect to the interpretation or performance of this Subcontract, the same shall be settled by arbitration by the American Arbitration Association ("Association") before a single arbitrator in accordance *569 with the Association's Construction Industry Arbitration Rule, at Dallas, Texas....."
The Woodson-Abshire contract contains the following clause:
"The Subcontractor is required to complete the above described work according to the terms and conditions of that certain contract by and between Woodson Construction Company, Inc. and Parsons-Gilbane, A Joint Venture with the Department of Energy under Subcontract No. 287-1072-000 according to the plans and specifications as amended, submitted thereunder and let for bids by invitation for bids dated October 17, 1978...." (Emphasis ours.)
Abshire argues that it was not bound to arbitrate this dispute because the language in its contract with Woodson was not explicit enough to make the arbitration clause in the Parsons-Woodson contract part of its contract with Woodson. We disagree for two reasons. First, we point out that the incorporation of an arbitration clause by reference to another written contract is a suitable method of evidencing the parties' intent to arbitrate as long as the arbitration clause in the contract that is referred to has a "reasonably clear and ascertainable meaning." J S & H Construction Co. v. Richmond County Hosp. Auth., 473 F.2d 212 (5th Cir.1973). See also, Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280 (La.1974). Both the federal and state arbitration acts indicate the strong legislative policies of both sovereigns favoring arbitration.[3] 9 U.S.C. § 1 et seq.; LSA-R.S. 9:4201 et seq. Any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration. United Steelwks. of Am. v. Warrior and Gulf N. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); American Dairy Queen Corp. v. Tantillo, 536 F.Supp. 718 (M.D.La.1982). The Louisiana Supreme Court explained, in Firmin v. Garber, 353 So.2d 975 (La.1977), that:
"The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action. Housing Authority v. Henry Ericsson Co., 197 La. 732, 2 So.2d 195 (1941)...."
Frederick Crowley, who was stipulated by both parties as an expert arbitration attorney, testified that the Federal government expects the subcontractors in projects like this to be bound by the arbitration clause in the main contract. This keeps down the costs of government projects and does not overburden the public fisc.
The second and an important reason for disagreeing with Abshire's position is that, after the dispute arose between Parsons, Woodson and the subcontractors, including Abshire, Woodson transmitted in writing to the subcontractors a proposal for the disposition of the disputes.
This agreement, dated March 5, 1980, states in substance that Mr. Frederick Crowley (an attorney who specializes in arbitration proceedings) would act as attorney for Woodson "to prepare and process its claims and the claims of its subcontractors" before the arbitration panel. The agreement proposed that Woodson would act as a conduit for purposes of privity of contract with Parsons to assist the subcontractors in preparing and processing their claims to the arbitration panel under the traditional "sponsorship" rules of the law.
Each subcontractor, including Abshire, was required to pay certain fees and expenses of Mr. Crowley. The schedule shows Abshire's share of attorney's fees as $5,000.00 at the time of execution of the instrument, $5,000.00 four months later, and other fees as they were incurred. As part of this agreement, Mr. Crowley agreed to represent Woodson and its subcontractors, including Abshire, in arbitration proceedings, or if appropriate, any appeals arising therefrom.
*570 This assignment was signed by R.L. Abshire Construction, Inc., through its president, Robert L. Abshire. Following this agreement, extensive work was performed by Mr. Crowley preparing for the arbitration proceedings. The claims of Woodson and its subcontractors, including Abshire, was presented to an arbitration panel composed of three members in the City of New Orleans. The hearing was very protracted, lasting approximately six weeks.
The written decision of the panel included the following table which specified the award that each subcontractor was entitled to:

 "WOODSON CLAIMS:
 WOODSON WOODSON'S SUBS
 ITEMS ITSELF ABSHIRE BECKMAN ICS SULPHUR
 1. Acceleration denied - denied - -
 2. Breach of Contr. denied - - - -
 3. Contract Adm. denied - - - -
 4. Electromech - - - $ 92,775 -
 5. Extended OH $536,430 $147,116 $437,424 198,228 $127,693
 6. Field Indirect 198,842 - 149,157 71,594 146,501
 7. Inefficiency - 126,480 - 63,156 -
 8. Labor Escal. - - 13,998 - -
 9. PDC-70 denied - - - -
 10. Profit - - - denied -
 11. Security denied - - - -
 ________ ________ __________ ________ ________
 TOTAL $735,272 $273,596 $600,579 $425,753 $274,194
 ======== ======== =========== ========= ========
 AGGREGATE (GROSS): $2,309,394.00"

As we have previously stated, Abshire deemed the award insufficient and refused to accept payment of same.
These facts reflect that, not only did the Woodson-Abshire contract contain a reference clause which obligated Abshire to submit his claim to arbitration, but his intent to submit to arbitration is exhibited by the fact that he entered into a detailed contract with an attorney, who specialized in arbitration to present his claim to the three member arbitration board. Abshire agreed to and entered into arbitration for the settlement of its claim.
This leads us to the second issue in this appeal and that is whether the submission of Abshire's dispute or claim to arbitration would divest the trial court of subject matter jurisdiction, thereby annulling any judgment rendered by a trial court on the merits of the claim.

SUBJECT MATTER JURISDICTION
LSA-C.C.P. art. 2002 provides that:
"A final judgment shall be annulled if it is rendered:
* * * * * *
(3) By a court which does not have jurisdiction over the subject matter of the suit."
Abshire voluntarily agreed to arbitration of its claim arising out of its performance of the contract. Once parties agree to arbitrate their disputes, the courts of this state lack jurisdiction to try the merits of the dispute. In the case of Spencer v. Hoffman, 392 So.2d 190 (La.App. 4th Cir.1980), the court stated as follows:
Our judicial system is precluded from exercising jurisdiction once arbitration has commenced, LSA-R.S. 9:4201, 4202,....
"The clear purpose of arbitration is to avoid costly and lengthy litigation and to *571 achieve a speedy resolution of the dispute in lieu of judicial proceedings. Firmin v. Garber, 353 So.2d 975 (La.1977). In Louisiana arbitration is favored as a public policy. Wright v. Round Corner Restaurants of La., Inc., 252 So.2d 341 (La.App. 4th Cir.1971).
"The award of an arbitrator is res judicata and unless grounds are established in accordance with arbitration law, for the vacation, modification or correction of the award, it must be affirmed. Bergeron v. Gassen, 185 So.2d 106 (La.App. 4th Cir.1966)."
After the arbitrator renders a decision, the trial court has only a limited power of review under U.S.C.A. 9 §§ 10, 11. These same provisions are found in our arbitration law, LSA-R.S. 9:4210, 9:4211. The review limitations are discussed in the cases of Firmin v. Garber, supra; Transcontinental Drilling Co., Inc. v. Davis Oil Co., 354 So.2d 235 (La.App. 4th Cir.1978) and Bergeron v. Gassen, 185 So.2d 106 (La.App. 4th Cir.1966).
We find that the trial court correctly granted the motion for summary judgment. The trial court which rendered the default judgment, in suit Number 83-983, lacked jurisdiction of the subject matter. Thus, the judgment rendered in that suit is a nullity.
Abshire argues that the trial court should have only nullified the portion of the default judgment above the amount of $502,716.00. Abshire alleges that Woodson admits it owes $502,716.00 and, thus, this part of the default judgment should be allowed to stand. There is no support for Abshire's contention. A judgment declared a nullity is as if it were never rendered. Thibodeaux v. Burns, 340 So.2d 335 (La. App. 1st Cir.1976).
For the above reasons, the trial court's judgment is affirmed. Costs of this appeal are to be paid by defendant-appellant, R.L. Abshire Construction Company, Inc.
AFFIRMED.
NOTES
[1] It does not appear that the trial judge was made aware that Abshire had submitted his claim to arbitration.
[2] Abshire cites Elte, Inc. v. S.S. Mullen, Inc., 469 F.2d 1127 (9th Cir.1972), as support for its proposition that the incorporation clause was not explicit enough to make the arbitration clause a part of its subcontract with Woodson. The Elte case is not applicable to the present case because the contract in the Elte case did not purport to incorporate an agreement to present the disputes to a neutral arbitration panel as is the case above.
[3] Both acts are almost identical in substance as they were both drafted from the Uniform Arbitration Act.