825 So.2d 1208 (2002)
WOMEN'S HEALTH CLINIC, a Corporation Duly Authorized to do Business in Louisiana, Causeway Medical Clinic, a Corporation Duly Authorized to do Business in Louisiana, Bossier City Medical Suite, Hope Medical Group for Women, James Deguerce, M.D., on Behalf of Themselves and the Patients They Serve
v.
The STATE of Louisiana.
No. 2002 CA 0016.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
Rehearing Denied June 20, 2002.
Writ Denied November 1, 2002.
*1209 William E. Rittenberg, New Orleans, for Plaintiff/Appellee Women's Health Clinic, et al.
Roy A. Mongrue, Jr., Baton Rouge, for Defendant/Appellant The State of Louisiana.
Before: FITZSIMMONS, DOWNING and LANIER,[1] JJ.
DOWNING, Judge.
This matter comes to us on transfer from the Louisiana Supreme Court to review the merits of a trial court judgment after the Supreme Court vacated the portion of the district court judgment declaring LSA-R.S. 9:2800.12 unconstitutional. This statute imposes tort liability on abortion providers in favor of "the mother of the unborn child for any damage occasioned or precipitated by the abortion." The trial court judgment granted a preliminary injunction that enjoined "the State of Louisiana, including its agents, agencies and officers from enforcing LSA-R.S. 9:2800.12." Concluding that we lack subject matter jurisdiction due to the lack of a justiciable controversy for the court to decide, we reverse the judgment of the trial court and remand the case to the trial court with a direction to dismiss.

FACTS AND PROCEDURAL HISTORY
The Plaintiffs (Women's Health Clinic) are four clinics and a Louisiana-licensed physician who provide abortion services in Louisiana. They filed suit against the State of Louisiana ("State") to challenge the constitutionality of LSA-R.S. 9:2800.12 alleging that the statute is unconstitutionally vague, violates the right to privacy, and denies them equal protection of the law. They sought temporary as well as permanent injunctive relief barring the State from enforcing the provisions of LSA-R.S. 9:2800.12, and a declaratory judgment that the statute is unconstitutional.
The district court granted a temporary restraining order and set for hearing plaintiffs' request for a preliminary injunction. Following the hearing, the district court rendered judgment granting the preliminary injunction, based on a finding that *1210 LSA-R.S. 9:2800.12 is unconstitutional. The State suspensively appealed the district court's judgment to the Louisiana Supreme Court pursuant to LSA-Const. art. V, § 5(D), on the ground that the district court declared LSA-R.S. 9:2800.12 unconstitutional.
Concluding that the issue of the constitutionality of the statute was not ripe for determination, the Supreme Court vacated the portion of the district court's judgment declaring LSA-R.S. 9:2800.12 unconstitutional and transferred the case to this court for expedited review as a timely filed appeal on the merits of the judgment granting the preliminary injunction. Women's Health Clinic v. State, 01-2645, p. 2 (La.11/9/01), 804 So.2d 625, 626.
On appeal, the State raises five assignments of error: 1) that the trial court erred in overruling the State's declinatory exception raising the objection of lack of subject matter jurisdiction; 2) that the trial court erred in overruling the State's peremptory exception raising the objection of no cause of action; 3) that the trial court erred in overruling the State's peremptory exception raising the objection of nonjoinder of a party; 4) that the trial court erred in overruling the State's peremptory exception raising the objection of no right of action and "standing;" 5) that the trial court erred in granting Women's Health Clinic's motion for a preliminary injunction.

JUSTICIABLE CONTROVERSY
We find merit in the State's first assignment of error. We recognize the "long-standing principle that our courts are without jurisdiction to issue or review advisory opinions and may only review matters that are justiciable." Duplantis v. Louisiana Board of Ethics, 00-1750, pp. 11-12, (La.3/23/01), 782 So.2d 582, 589. In Jordan v. Louisiana Gaming Control Board, 98-1122, pp. 18-19 (La.5/15/98), 712 So.2d 74, 85, the supreme court quoted the following language from Abbott v. Parker, 259 La. 279, 308, 249 So.2d 908, 918 (1971), to define a justiciable controversy:
A "justiciable controversy" connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of a conclusive character.
Here, the plaintiffs seek to enjoin the State from enforcing LSA-R.S. 2800.12. But the statute creates a private right of action in favor of women who suffer damage while undergoing an abortion. The statute contains no provision authorizing the State or any of its agencies or officers to enforce, or take any action on, the provisions of the statute. By its terms, LSA-R.S. 2800.12 creates no apparent dispute between the plaintiffs and the State of Louisiana.
The U.S. Fifth Circuit Court of Appeals recently considered substantially the same issues in Okpalobi v. Foster, 244 F.3d 405 (5 Cir.2001). All five plaintiffs here were intervenors against Louisiana's governor and treasurer in the Okpalobi suit. The issues raised were substantially identical. In Okpalobi, the U.S. Fifth Circuit, sitting en banc, ruled that it lacked jurisdiction because no case or controversy existed between the parties. Okpalobi, 244 F.3d at 429. It alternately ruled that the defendants enjoyed immunity from the suit under the Eleventh Amendment to the United States Constitution. Okpalobi, 244 F.3d at 424.
In Louisiana Independent Auto Dealers Association v. State, 295 So.2d *1211 796, 799, n. 1 (La.1974), the Louisiana Supreme Court recognized that federal decisions on standing and justiciability "should be considered persuasive" by Louisiana courts. Article III of the United States Constitution limits the federal judicial jurisdiction to only "cases and controversies." There is no comparable limitation found in the Louisiana Constitution. Rather, Louisiana's requirement of a justiciable controversy and its concomitant prohibition of advisory opinions arises from jurisprudence and the various procedural laws which apply depending on the type of action brought. Louisiana Associated General Contractors, Inc. v. State, 95-2105, p. 8 (La.3/8/96), 669 So.2d 1185, 1192. "Regardless of the source of the restriction, however, both jurisdictions require that the court decide only justiciable controversies." Id. Therefore, federal cases are at the very least persuasive, and standing and justiciability thereunder may in fact be more restrictive due to the fact the federal court limitation is constitutionally based. Id.
Here, we find the U.S. Fifth Circuit's en banc decision in Okpalobi to be on point and highly persuasive and instructive. The Fifth Circuit summarized the relationship between the parties as follows:
[I]f there is no act, or potential act, of the state official to enjoin, an injunction would be utterly meaningless. Here, there is no act, no threat to act, and no ability to act.
Okpalobi, 244 F.3d at 421.
In concluding that no real case or controversy existed, the U.S. Fifth Circuit noted the central weakness in plaintiffs' position:
"[N]otwithstanding that the defendants are powerless to enforce Act 825 (of 1997, establishing LSA-R.S. 9:2800.12) against the plaintiffs (or to prevent any threatened injury from its enforcement), the plaintiffs yet must show (1) how these impotent defendants play a causal role in the plaintiffs injury and (2) how these defendants can redress their alleged actual or threatened injury. The panel's reference to the self-enforcing nature of Act 825 is inapposite to the analysis of whether the plaintiffs have any controversy with these defendants. That is to say the panel confuses the statute's immediate coercive effect on the plaintiffs with any coercive effect that might be applied by the defendants.... (First parentheses added.)
Okpalobi, 244 F.3d at 426.
The court explained that "[o]nce the coercive impact of the statute (coercive in that it exposes plaintiffs to unlimited tort liability by individual plaintiffs) is understood to be distinct from the coercive power of state officials (for example if the state could institute criminal or civil proceedings under the act), the panel's finding of causation here is without basis." Id.
The U.S. Fifth Circuit then concluded that the injunction granted by the district court was meaningless. It explained, "under Act 825, no state official has any duty or ability to do anything. The defendants have no authority to prevent a private plaintiff from invoking the statute in a civil suit. Nor do the defendants have any authority under the laws of Louisiana to order what cases the judiciary of Louisiana may hear or not hear." (Footnote omitted.) Okpalobi, 244 F.3d at 426-427. The court continued, "Because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court." Okpalobi, 244 F.3d at 427.
Nonetheless, the plaintiffs argue that it is proper for the 19th Judicial District Court to enjoin the Attorney General and *1212 all clerks and court employees in the state from enforcing the act. The Okpalobi court adequately addresses the governor's and attorney general's lack of power, duty and ability to redress the asserted injuries. Id. While the Okpalobi court also recognizes that the State has no authority to order which cases the judiciary of Louisiana may hear or not hear, we think further explication on this point is warranted.
Louisiana's constitution provides that, "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice ... for injury to him in his person, property, reputation, or other rights." LSA-Const. (1974) art. I, § 22. We note that open courts clauses contained in the constitutions of 39 states "come from the Magna Carta Chapter 40, as viewed through the lens of Sir Edward Coke's Second Institute." Jonathan M. Hoffman, By The Course Of Law: The Origins Of The Open Courts Clause Of State Constitutions, 74 Or. L.Rev. 1279, 1281 (Winter 1995).[2] We therefore look askance at any attempt to enjoin the several clerks of court from accepting lawsuits stating private claims for relief authorized by the Louisiana legislature. We also recognize that the plaintiffs here will have the opportunity to present their defenses and seek adequate remedy if and when private actions are brought against them.
Specifically regarding the clerks of court in Louisiana's parishes, we observe that these are elected officials who derive their authority from the Louisiana Constitution. Cott Index Company v. Jagneaux, 96-860, p. 4 (La.App. 3 Cir. 12/26/96), 685 So.2d 656, 658. We know of no law, and the plaintiffs cite none, giving the State of Louisiana any authority to direct these clerks what cases it can or cannot accept.[3] The cases cited by the plaintiffs are all distinguishable because they involve justiciable controversies between parties and individual clerks, not all state clerks of court who were not even included as parties in the litigation.
The U.S. Fifth circuit acknowledged, as do we, that the plaintiffs are suffering a threatened injury in that they may face liability in private actions from women who suffer damage while undergoing abortions. Okpalobi, 244 F.3d at 427. What the Fifth Circuit said, and we also say, is that "the injury alleged by the plaintiffs is not, and cannot possibly be, caused by the defendantsthat is, these defendants will not file and prosecute a cause of action under Act 825 against these plaintiffs; and that their injury cannot be redressed by these defendantsthat is, these defendants cannot prevent purely private litigants from filing and prosecuting a cause of action under Act 825 and cannot prevent the courts of Louisiana from processing and hearing these private tort cases." Id.
We conclude, as did the U.S. Fifth Circuit, that "it is the private plaintiff, bringing *1213 a private lawsuit under Act 825, who causes the injury of which the plaintiffs complain." Okpalobi, 244 F.3d at 428. We therefore hold that no justiciable controversy exists between the plaintiffs and the State of Louisiana. The State's first assignment of error has merit.
Because we find merit in this assignment of error, we pretermit discussion of the remaining assignments of error.

CONCLUSION
Concluding no justiciable controversy exists between the plaintiffs and the State of Louisiana, we reverse the judgment of the trial court. We remand this matter with direction that plaintiffs' suit be dismissed. Costs are taxed to the plaintiffs.
REVERSED. REMANDED WITH ORDER.
NOTES
[1] The Honorable Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Blackstone also addressed the ancient right of citizens to seek redress of injuries in the courts of justice. After enumeration and discussion of the three absolute rights of Englishmen life, liberty and propertyBlackstone states, "But in vain would these rights be declared, ascertained, and protected by the dead letter of the laws, if the constitution had provided no other method to secure their actual enjoyment." Blackstone, Commentaries on the Laws of England, § 194. Blackstone discusses the subordinate right of access to the courts as follows:

A third subordinate right of every Englishman is that of applying to the courts of justice for redress of injuries. Since the law is in England the supreme arbiter of every man's life, liberty, and property, courts of justice must at all times be open to the subject, and the law be duly administered therein. Id. at § 197.
[3] We do not address here whether these clerks should have been joined as parties if they were to be enjoined.