KUHN, J.
[ 2Pefendant-appellant, International Offshore Services, LLC (IOS) appeals the trial court’s judgment granting summary judgment in favor of plaintiff-appellee, Stephen Williams, declaring that he was not prohibited from engaging in certain business operations by the terms of either an employment agreement or an operating agreement entered into by the parties. Aso referred to this panel on review are two writ applications. Because we conclude that the trial court lacked subject matter jurisdiction over Williams’ claims, we vacate the judgment granting declaratory relief, dismiss 2011 CW 1240 as moot, and grant 2011 CW 1318 to sustain the exception raising the objection of lack of subject matter jurisdiction.
FACTUAL AND PROCEDURAL HISTORY
In 2006, Williams founded IOS, a corporation which owns and operates several marine vessels that provide support services to the oil and gas industry. In January 2009, Williams sold the majority interest in IOS to Ferry Holdings Corp. (Ferry), a subsidiary of Platinum Equity LLC. As part of the sale, Williams retained a 20% ownership interest and also entered into an employment agreement to work as the CEO of IOS for two years following the sale (the Employment Agreement), which included a non-compete provision.[1]
*215 |sIn July 2009, Ferry sought to refinance the purchase of its membership interest in IOS, which included bringing in more equity owners. As a result, a Third Amended and Restated Operating Agreement (the Operating Agreement) was executed by all members of IOS, including Williams. The Operating Agreement, dated July 7, 2009, contained a non-compete provision, which was substantially similar to the non-compete provision in the Employment Agreement,[2] and also contained an arbitration provision.[3]
After serving his two-year term, Williams resigned as CEO of IOS in January 2011. Following his resignation, Williams purchased four liftboats through his newly formed company, Alliance Lift-boats, LLC, for the purpose of providing liftboat services to the oil and gas industry.
On January 17, 2011, IOS and Ferry instituted a claim for arbitration with the American Arbitration Association, asserting that Williams breached the non-compete terms of the Operating Agreement and fiduciary duties he owed to IOS. IOS and Ferry requested that the arbitration panel: (1) enter an award in favor of IOS and Ferry and against Williams enjoining him from violating the Operating Agreement or his fiduciary duties; (2) declare the respective rights and obligations of Williams, IOS, and Ferry under the Operating Agreement; and (3) award damages to IOS and Ferry.
|40n January 19, 2011, Williams filed a petition for declaratory judgment, naming IOS as defendant. Although the original petition did not include any allegations about the non-compete provision in the *216 Operating Agreement, Williams supplemented his petition, in March 2011, to include allegations that he was entitled to a declaration that his activities did not violate either the Employment Agreement or the Operating Agreement.
IOS filed a peremptory exception raising the objection of no cause of action and a dilatory exception raising the objection of prematurity, contending that it was entitled to a dismissal of Williams’ claims as related to the Operating Agreement because Williams failed to abide by the arbitration agreement as set forth in the Operating Agreement. After a hearing on May 25, 2011, the trial court denied relief in open court, and on June 24, 2011, signed a judgment overruling IOS’s exceptions of no cause of action and prematurity.
On July 8, 2011, IOS filed a writ application with this court, bearing number 2011 CW 1240, seeking review of the trial court’s June 24, 2011 judgment, denying the exceptions of no cause of action and prematurity with regard to the claims as to the Operating Agreement.[4] This court ordered that the writ be referred to the panel to which the related appeal was assigned. See Williams v. Int’l Offshore Services, L.L.C., 2011-1240 (La.App. 1st Cir.7/22/11) (an unpublished writ action).
During May 2011, Williams filed a motion for summary judgment, averring that there was no genuine issue of fact regarding whether he was competing against IOS in contravention of the terms of the non-compete clauses in the Employment Agreement and Operating Agreement. Williams requested that the trial court decree that he was not prohibited from engaging in certain specified | ¡¡business activities. Williams also sought a declaration that the non-compete and nonsolicitation provisions in both the Employment Agreement and the Operating Agreement were null and unenforceable or, alternatively, did not prevent Williams from engaging in certain specified business.
Before the hearing on Williams’ motion for summary judgment, however, IOS passed a corporate resolution stating that it released Williams from all claims arising from the non-compete provision as found in the Employment Agreement. In the corporate resolution, IOS expressly reserved all its rights in connection with the non-compete provision as found in the Operating Agreement.
On May 26, 2011, IOS filed a declinatory exception raising the objection of lack of subject matter jurisdiction, averring that as a result of its corporate resolution, there was no longer a justiciable claim or controversy regarding the Employment Agreement, and, thus, any claim relating to it should be dismissed for lack of subject matter jurisdiction. Because the exception was not filed in compliance with the required time period prior to the scheduled hearing date as mandated by the district court rules, the trial court declined to hear the exception prior to ruling on Williams’ motion for summary judgment.
A hearing on Williams’ motion for summary judgment was held on June 8, 2011. The trial court concluded that Williams was not prevented or prohibited by either the Employment Agreement or the Operating Agreement from engaging in the lift-boat business, engaging in the business of providing oil and gas well plug and abandonment services, or engaging in any other specified business, and on June 21, 2011, signed a judgment granting sum *217 mary judgment in favor of Williams. Also on June 21, 2011, the trial court heard IOS’s exception of lack of subject matter jurisdiction premised on the corporate resolution and overruled it in open court. A written judgment to that effect was signed on July 12, 2011.
| JOS subsequently filed a writ application, challenging the trial court’s overruling of its exception of lack of subject matter jurisdiction. That writ application, like the earlier one, was also referred to the panel to which the related appeal was assigned. See Williams v. Int'l Offshore Services, L.L.C., 2011-1818 (La.App. 1st Cir.8/15/11) (an unpublished writ action). Lastly, IOS filed this appeal challenging the June 21, 2011 judgment, which granted Williams’ motion for summary judgment on the merits of his claim for declaratory relief, and the July 12, 2011 overruling of the exception of lack of subject matter jurisdiction.
DISCUSSION
A court’s subject matter jurisdiction is an issue that cannot be waived or conferred by the consent of the parties. The issue of subject matter jurisdiction may be raised at any time, even by the court on its own motion, and at any stage of an action. Joseph v. Ratcliff, 2010-1342 (La.App. 1st Cir.8/25/11), 63 So.3d 220, 224. Appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue. Motorola, Inc. v. Associated Indent. Corp., 2002-0716 (La.App. 1st Cir.4/30/03), 867 So.2d 715, 717.
Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void. See La. C.C.P. arts. 3 and 925(C).
Both the federal and state arbitration acts indicate the strong legislative policies of both sovereigns favoring arbitration. See 9 U.S.C. § 1 et seq.; La. R.S. 9:4201 et seq.[5] Any doubt as to whether a controversy is arbitrable should be 17resolved in favor of arbitration. Woodson Constr. Co., Inc. v. R.L. Abshire Constr. Co., Inc., 459 So.2d 566, 569 (La.App. 3d Cir.1984).
At oral arguments, the parties verified to this court that Williams’ claims under the Operating Agreement were in arbitration. Once arbitration has commenced, the courts are precluded from exercising jurisdiction. Peter Vicari General Contractor, Inc. v. St. Pierre, 02-250 (La.App. 5th Cir.10/16/02), 831 So.2d 296, 299 (citing Woodson Constr. Co., Inc., 459 So.2d at 570-71). Accordingly, sua sponte, we conclude that the trial court did not have subject matter jurisdiction over the claims arising out of the Operating Agreement and, therefore, incorrectly granted summary judgment in favor of Williams on this basis.
In appeal of the grant of summary judgment, as well in its writ application bearing number 2011 CW 1318, IOS challenges the trial court’s denial of the exception of lack of subject matter jurisdiction insofar as Williams’ claims to relief under the Employment Agreement. IOS urges that by virtue of the corporate resolution *218 that released Williams from “any and all” claims IOS may have arising from the non-compete provisions in the Employment Agreement, Williams’ demand for declaratory relief seeking a decree of his obligations under the Employment Agreement was rendered moot, thereby further depriving the trial court of subject matter jurisdiction.[6] Specifically, IOS contends that, based on its subsequent corporate action, there no longer remains any justiciable claim or controversy as to the non-compete agreement in the Employment Agreement.
If a case is moot, there is no subject matter on which the judgment of the court can operate. Council of City of New Orleans v. Sewerage and Water Bd. of New Orleans, 2006-1989 (La.4/11/07), 953 So.2d 798, 801. It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render 18advisory opinions with respect to controversies. In the Matter of E.W., 2009-1589 (La.App. 1st Cir.5/7/10), 38 So.3d 1033, 1036. Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. A “justiciable controversy” is one presenting an existing actual and substantial dispute involving the legal relations of parties who have real adverse interests and upon whom the judgment of the court may effectively operate through a decree of conclusive character. Women’s Health Clinic v. State, 2002-0016 (La.App. 1st Cir.5/10/02), 825 So.2d 1208, 1210, writ denied, 2002-2002 (La.11/1/02), 828 So.2d 586.
Moreover, even though the requirements of justiciability are satisfied when the suit is initially filed, when the fulfillment of these requirements lapses at some point during the course of the litigation before the moment of final disposition, mootness occurs. In such a case, there may no longer be an actual controversy for the court to address, and any judicial pronouncement on the matter would be an impermissible advisory opinion. Thus, jurisdiction, although once established, may abate if the case becomes moot. In the Matter of E.W., 38 So.3d at 1037.
Because IOS voluntarily waived its rights arising from the non-compete provisions in the Employment Agreement prior to rendition of summary judgment in favor of Williams, and in light of the allegations of Williams’ petition, there was no justicia-ble controversy for the trial court, and consequently this court, to act upon; in other words, with the corporate resolution waiver, there no longer existed a controversy presenting an actual and substantial dispute involving the legal relations of the real adverse interests of the parties relative to the Employment Agreement. See Chauvin v. Wellcheck, Inc., 2005-1571 (La.App. 1st Cir.6/9/06), 938 So.2d 114, 118 (a litigant not asserting a substantial existing legal right is without standing to seek a declaratory judgment). Accordingly, we conclude that the trial court did not have subject matter jurisdiction over the claims |9arising out of the Employment Agreement and, therefore, incorrectly granted summary judgment in favor of Williams on this basis.
CONCLUSION
Because the trial court did not have jurisdiction over Williams’ claims arising out of either the Operating Agreement (as those claims were in arbitration pursuant to the arbitration provision) or the Employment Agreement (as IOS’s corporate resolution waiving any claims it may have had against Williams resulted in no justiciable controversy and, therefore, rendered *219 his request for declaratory relief moot), we vacate the trial court’s judgment granting summary judgment in favor of Williams. Likewise, we grant 2011 CW 1818, filed by IOS, to reverse the trial court’s July 12, 2011 judgment overruling the exception raising the objection of lack of subject matter jurisdiction to decide Williams’ claims relative to the Employment Agreement. We hereby order that the exception be sustained, and we hereby dismiss Williams’ claims relative to the Employment Agreement. And because the trial court lacked subject matter jurisdiction over any of Williams’ claims for declaratory relief, writ application bearing number 2011 CW 1240, also submitted by IOS, wherein it sought review of the trial court’s June 24, 2011 judgment overruling its exceptions raising the objections of no cause of action and prematurity, is dismissed as moot. Appeal costs are assessed against plaintiff-appellee, Stephen Williams.
JUDGMENT VACATED; 2011 CW 1318 GRANTED AND 2011 CW 1240 DISMISSED.
WHIPPLE, J., dissents & assigns reasons.
CARTER, C.J., dissents for the reasons assigned by WHIPPLE, J.

. Section 4.2 of the Employment Agreement states, in pertinent part:
Non-Competition. Executive agrees that during the Employment Term and, provided that the Company continues to pay Executive his Base Compensation, Executive further agrees and covenants for a period of two years following the Termination Date *215 within the Restricted Territory, Executive shall not, directly or indirectly:
a. Carry on or engage in the Restricted Business....
For this purpose, the “Restricted Territory" means (x) the State of Louisiana, Parishes of Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, Iberia, Iberville, Jeff Davis, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Landry, St. Martin, St. Mary, St. Tammany, Terrebonne, Vermilion, and West Baton Rouge, the State of Texas, County of Harris, and the State of Alabama, County of Mobile....
The “Restricted Business” means the business presently conducted by the Company or any subsidiary, which the parties agree consists of (A) providing offshore marine transportation to the oil and gas industry, (B) operating offshore construction barge, offshore pipeline lay and bury barge, or offshore well intervention and diving support barge, (C) operating any offshore supply vessel or tug, or (D) acting as a broker or intermediary with respect to any of the foregoing.

. Section 13.2 of the Operating Agreement defines "Restricted Business" and mirrors the language of Section 4.2 of the Employment Agreement, as set forth above.

. The arbitration provision in the Operating Agreement states, in pertinent part:
Binding Arbitration. Any controversy or claim arising out of or relating to this Operating Agreement, including to interpret or enforce any provision of this Operating Agreement, shall be settled by final and binding arbitration administered by the American Arbitration Association, under its Commercial Arbitration Rules ... and judgment on the award rendered by the arbitrators may be entered in any court of competent jurisdiction.... Any arbitration pursuant to this Section 17.19 shall be conducted in St. Louis, Missouri. Any arbitration award may be entered in and enforced by any court of competent jurisdiction and the parties hereby consent and commit themselves to the jurisdiction and venue of any state or federal court located in St. Louis, Missouri for purposes of the enforcement of any arbitration award. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the laying of such venue or any defense of inconvenient forum. (Emphasis added).

. IOS originally filed a writ application on these issues on June 21, 2011, but due to defects in the filing, the writ was not considered. See Williams v. Int’l Offshore Services, L.L.C., 2011-1122 (La.App. 1st Cir.6/30/11) (an unpublished writ action).

. Both acts are almost identical in substance as they were both drafted from the Uniform Arbitration Act. See FIA Card Services, N.A. v. Weaver, 2010-1372 (La.3/15/11), 62 So.3d 709, 712.

. A reconventional demand IOS had asserted was voluntarily dismissed with prejudice.